## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **YARA INTERNATIONAL ASA AND YARA SLUISKIL BV,** | |
| Plaintiffs, | Case No.   1:18-cv-00138 |
| **v.** | |
| **GREEN GRANULATION TECHNOLOGY LTD., ROLAND MONSTREY, KEN MONSTREY, AND WEI WANG,** | |
| Defendants. | |

## VERIFIED COMPLAINT

1. Plaintiffs Yara International ASA and Yara Sluiskil BV ("Yara" or "Plaintiffs"), by their attorneys, for its Complaint against Defendants, state as follows:

## I.   NATURE OF THE ACTION

2. Yara brings this action because Defendants have misappropriated Yara's trade secrets and other confidential and proprietary information in violation of: (a) the federal Defend Trade Secrets Act (the "DTSA"); (b) the Virginia Uniform Trade Secrets Act (the "VUTSA"); (c) the contractual obligations and duties Roland Monstrey owed to Yara both before and after the termination of his employment; (d) Virginia statutory civil conspiracy; and (e) common law civil conspiracy. Yara also seeks to prevent Defendants from further destroying Yara's intellectual property rights.

3. Through this action, Yara seeks emergency injunctive relief directing Defendants to either an office action response or a continuation patent application so that the Defendants' U.S. patent application remains pending. Additionally, Yara seeks an order compelling Defendants to not expressly abandon, amend, or otherwise alter the scope of their patent application or the

continuation of their application. Yara also seeks permanent injunctive relief preventing further acts of misappropriation by Defendants and ongoing breaches of the confidentiality provisions of Roland Monstrey's employment agreement. Finally, Yara seeks damages for the destruction of its trade secrets.

## II.  <u>PARTIES</u>

4.     Yara International ASA is a Norwegian corporation with its principal place of business at Drammensveien 131, 0277, Oslo, Norway.

5.     Yara Sluiskil BV is a Dutch corporation with its principal place of business at Industrieweg 10, 4541 HJ Sluiskil, Netherlands. Yara Sluiskil BV is a subsidiary of Yara International ASA.

6.     Upon information and belief, Green Granulation Technology Ltd. ("GGT") is a Chinese corporation with its principal place of business at Suite 1803, 18th Floor, Beautiful Group Tower, 77 Connaught Road, Central, Hong Kong, China.

7.     Upon information and belief, Roland Monstrey is a natural person who resides at Kloosterstraat 33, 9960 Assenede, Belgium.

8.     Upon information and belief, Ken Monstrey is a natural person who resides at Lindekenstraat 18, 9960 Assenede, Belgium.

9.     Upon information and belief, Wei Wang is a natural person who resides at Room 1108, Building 426, Wang Jing Xi, Yuan (Area 4), Chaoyang District, Beijing City, China.

## III.  <u>JURISDICTION AND VENUE</u>

10.    This Court has "federal question" subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Yara asserts claims for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* against Defendants. This Court has supplemental or pendant jurisdiction over Yara's remaining claims, pursuant to 28 U.S.C. § 1367, because such claims are so

related to Yara's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.     This Court has personal jurisdiction over Defendants because they have sufficient minimum contacts in this District and they have purposefully availed themselves of the privilege of conducting business in this District. For example, Defendants have filed several patent applications at the U.S. Patent and Trademark Office ("USPTO") in Alexandria, Virginia. Specific to the facts in this lawsuit, Defendants misappropriated Plaintiffs' trade secrets by filing U.S. Patent Application No. 15/498,245 in Alexandria, Virginia. Alternatively, Defendants are subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2) because, as residents of foreign countries, they are not subject to the jurisdiction of any state's courts of general jurisdiction and they have not identified a state that would be more appropriate than Virginia.

12.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to this Complaint occurred in this judicial district— specifically at the USPTO in Alexandria, Virginia. Alternatively, venue is appropriate under 28 U.S.C. § 1391(b)(3).

## IV.     FACTS RELEVANT TO ALL CLAIMS

### A.     Development of Yara's trade secrets and confidential information

13.     Yara is a world leader in fertilizer production. It formulates and produces fertilizer granules, such as urea or ammonium nitrate granules.

14.     Yara's engineers invented a proprietary granulation system and process for producing chemical fertilizers. Among the key components of the system were a granulator and an exhaust fan located downstream from the granulator (*with no blower fan upstream* from the granulator), which was a significantly different way to granulate from the known processes that had blower fans upstream of the granulator and exhaust fans downstream of the granulator. In

Yara's special configuration, the exhaust fan at the downstream end of the process draws enough air through the granulator to fluidize[1] a bed of fertilizer material without the need for additional fans upstream from the granulator. In short, Yara's granulation system improved upon prior technologies that used an upstream fluidization blower fan, and made the process significantly more efficient. No off-the-shelf or known system for making fertilizer granules was configured in this way before Yara's invention.

15.     Yara implemented its innovative technology in its Semi-Industrial Pilot Plant ("SIPP") located in Sluiskil, Netherlands. In the 1980s and 1990s, Yara tested and produced products using its first-generation SIPP granulation system with the reconfigured exhaust system. Between 1997 and 1998, Yara modernized and updated the SIPP granulation system. The changes included updating old parts and components, but no material changes were made to the overall process (i.e., SIPP kept the "single downstream exhaust fan" configuration). This second generation SIPP granulation system is still in operation today.

16.     Yara made it clear to its employees and others that the operating manual ("SIPP Manual"), granulation system, and related processes were Yara's confidential and secret information. For example, visitors to the SIPP facility were required to register upon entry and to be escorted by a Yara employee.

17.     Yara did not publish or publicly disclose the key invention used in its SIPP granulation technology, opting instead to keep them as a trade secret. Indeed, only a select few employees at the Sluiskil plant had access to the SIPP Manual or the equipment. And they understood that the technology must remain secret. In addition, Yara required employees to sign

---

[1] "Fluidize" here means "to suspend (as solid particles) in a rapidly moving stream of gas or vapor to induce flowing motion of the whole." *Merriam Webster's Collegiate Dictionary*, "fluidize" (10th ed.).

agreements that obligated them to protect Yara's technology even after they stopped working there.

**B.      Defendants' misappropriation of Yara's trade secrets**

18.      Upon information and belief, Defendant Roland Monstrey worked for Yara for almost 38 years, from 1969[2] until his voluntary retirement in 2007. During his lengthy career at Yara, Roland Monstrey held many positions, including production manager of the SIPP.

19.      Upon information and belief, Roland Monstrey received an employment offer letter in 1969 that included a confidentiality provision.

20.      Upon information and belief, Roland Monstrey signed an employment agreement in 1980 that included a confidentiality provision.

21.      Roland Monstrey was not an inventor of the Yara technology, but he played a key role in the approval and implementation of the second-generation SIPP granulation system. For example, he approved the schematics for the second-generation SIPP granulation system.

22.      Upon information and belief, as an expert in granulation technology, Roland Monstrey played an important role in the operation of the SIPP, and had full access to the SIPP facility and the SIPP Manual, and had a thorough understanding of the novel SIPP granulation system and its underlying technology.

23.      Roland Monstrey continued working for Yara as a consultant. During that time, he had confidential access to the proprietary SIPP granulation system.

24.      Based on his long career and position as the product manager of the SIPP, Roland Monstrey acquired a thorough understanding of Yara's SIPP granulation system and technology, which included the unique single exhaust fan located downstream from the granulator. This

---

[2] Roland Monstrey started working for Yara Sluiskil BV's predecessor, Nederlandse Stikstof Maatschappij.

5

technology was a Yara trade secret.

25.    Roland Monstrey's son, Defendant Ken Monstrey, worked for Yara in the summer of 2002 at the very same facility in Sluiskil. Because the SIPP granulation system and its associated technology was a closely guarded trade secret, Ken Monstrey was not authorized by Yara to have access to the equipment or to work on this process line, and Ken Monstrey would have had no authorized access to the technology.

26.    Ken Monstrey had a fiduciary duty to keep any of Yara's confidential or proprietary information confidential.

27.    After leaving Yara, Ken Monstrey and his mother (Roland Monstrey's wife), started a Belgian company named Flanders Granulation Technology B.V.B.A.

28.    Upon information and belief, Defendant Roland Monstrey and his wife share ownership in Flanders Granulation Technology B.V.B.A. with their son, Ken Monstrey.

29.    Upon information and belief, Flanders Granulation Technology owns 25% of GGT. Ken Monstrey is GGT's Chief Technology Officer.

30.    Upon information and belief, Defendant Wei Wang owns 25% of GGT.  Wei Wang is Director of GGT.

31.    Upon information and belief, GGT describes itself as a "world leading provider of fertilizer related process technology, offering urea granulation and other fertilizer-related technology . . . the owner and licensor of the state-of-the art CRF urea granulation process."

**C.    Defendants filed patent applications covering Yara's trade secrets**

32.    On October 28, 2014, GGT filed Dutch Patent Application No. 2013694, which disclosed and claimed Yara's secret technology developed at the pilot plant in Sluiskil.

33.    Exactly a year later, GGT filed U.S. and Chinese patent applications claiming priority to the Dutch application. GGT is the assignee/applicant of the U.S. and Chinese patent

applications, which list Wei Wang and Ken Monstrey as co-inventors.

34.    Yara discovered the U.S. GGT application after it published on April 28, 2016.[3]

35.    The GGT application describes and claims a fluid-bed reactor with an air-moving device, such as an exhaust fan, located downstream from a granulator, and methods of using the same. The GGT application specifically discloses that no upstream fans are necessary. But the named "inventors" did not conceive or invent this subject matter. Rather, GGT derived the subject matter of the GGT application from Yara's proprietary granulation technology.

36.    The GGT application covers the technology developed by Yara at its pilot plant in Sluiskil. As a result of filing and publishing the GGT application, Defendants have made public Yara's innovative granulation system and processes—technology held as a trade secret for ***over 30 years***.

37.    Considering the serious violation of Yara's intellectual property rights and the additional irreparable harm Yara would suffer from public disclosure of their trade secret through the filing of the illegitimate patent applications, Yara sent a notice to GGT, GGT's Belgian shareholders, Roland Monstrey, and Ken Monstrey on January 20, 2017. The notice letters asked GGT to promptly assign all patent applications to Yara as the rightful owner of the claimed inventions. GGT did not comply. The parties did, however, engage in several rounds of settlement discussions. To date, no agreement has been reached.

38.    Upon information and belief, Defendants have continued to use and publish Yara's trade secrets and confidential information to the present day.

**D.     Yara's derivation proceeding and prosecution of the U.S. patent applications**

39.    Left with little choice to protect its now-public trade secrets and to limit the

---

[3] Yara also discovered that the Dutch application issued as a patent on October 4, 2016.

unavoidable damage of the public disclosure, Yara filed U.S. Patent Application No. 15/498,245 (the "Yara application") on April 26, 2017.

40.    Two days later, Yara filed a Petition to Institute Derivation Proceeding Under 35 U.S.C. § 135 to "correct the naming of the inventor[s] in the [GGT] application." 35 U.S.C. § 135(b). Yara served GGT's patent counsel with a copy of the petition for derivation proceeding.

41.    Yara's derivation proceeding allows the USPTO to determine whether GGT "inventors" derived the claimed invention from Yara's inventors, without authorization, and to correct the GGT application by replacing GGT's inventors with Yara's inventors. But the USPTO has not yet instituted Yara's derivation proceeding because neither GGT's nor Yara's application is in condition for allowance.

42.    To preserve the USPTO's ability to institute the derivation proceeding, GGT cannot amend its claims to cover different subject matter nor abandon its application (without first filing a continuation application) because then, the USPTO would be unable to correct inventorship. In addition, to preserve Yara's intellectual property rights, GGT cannot alter the scope of the patents issuing from these patent applications, for example, through the filing of any terminal disclaimers or other amendments. In an effort to preserve its rights, Yara has repeatedly reached out to GGT's counsel.

43.    Currently, both the GGT application and the Yara application are assigned for review to the same patent examiner at the USPTO. On August 25, 2017, the patent examiner issued office actions for both applications based on a Japanese and U.S. reference. For the Yara application only, the patent examiner *also cited as prior art the GGT application and a February 2015 GGT publication*. The statutory, non-extendable deadline for a response to avoid abandonment is *February 26, 2018*. *See* 35 U.S.C. § 133 (allowing "six months" to respond).

44.     On December 14, 2017 (after notifying GGT's counsel), Yara's attorneys met with the patent examiner to discuss claim amendments to address the rejections over the Japanese and U.S. references. The patent examiner agreed that Yara's "[p]roposed claim would overcome the 102 rejection . . . and 103 rejection." This shows that the GGT application can be placed in condition for allowance. But it does not mean that Yara can get a patent on its technology. As noted above, the patent examiner also rejected the Yara application based on two GGT documents. The only path for Yara to patent its technology is for the USPTO to correct the inventorship of the GGT application. Once the GGT application is placed in a condition for allowance, the path for a derivation proceeding (and correction of inventorship) will be cleared.

45.     Armed with a way to get allowable claims, Yara shared results of its meeting with the patent examiner with GGT, and offered to provide GGT with suggested claim amendments to overcome the USPTO's rejections. GGT accepted the offer and Yara sent GGT a draft response. At that point, Yara believed that GGT would help mitigate Yara's harm by keeping the GGT application pending, and working toward an amicable resolution.

46.     By the end of January 2018, GGT still had not filed the draft response. Instead, GGT offered to file the draft response in exchange for unrelated settlement terms and releases.

47.     Yara sent a formal notice to GGT, its Belgian shareholders, Roland Monstrey, Ken Monstrey, and their attorneys on January 30, 2018. In the notices, Yara asked GGT and Ken Monstrey to file a USPTO response no later than Friday, February 2, 2018 at 12:00 pm (Eastern). Yara stressed that this step was necessary to maintain the status quo and limit Yara's damage as much as possible. The deadline passed with no USPTO filing.

48.     In a final effort to avoid an emergency, Yara asked GGT's counsel (once again) to maintain the status quo by filing a USPTO response no later than Thursday, February 8, 2018 at

12:00 pm (Belgium time). That deadline also passed with no USPTO filing.

49.     Under these circumstances, the only reasonable conclusion is that Defendants intended to misappropriate Yara's confidential, proprietary, and trade secret information and to use this information to assist Yara's competitors.

50.     As a result of Defendants' misappropriation of Yara's confidential, proprietary, and trade secret information, Yara has suffered and will continue to suffer irreparable harm.

51.     As a result of Defendants' misappropriation of Yara's confidential, proprietary, and trade secret information, Yara has suffered and will continue to suffer significant damages.

52.     Yara has no adequate remedy at law. If the Court does not enjoin Defendants' continued misappropriation and use of its confidential, proprietary, and trade secret information, then Yara will lose business, goodwill, customers and its competitive advantage in the market in which it does business.

53.     Because of the critical nature of the information Defendants misappropriated, Defendants' actions have the potential to damage Yara's overall business operations permanently and irreparably.

54.     Yara is entitled to preliminary and permanent injunctive relief enjoining Defendants from, among other things, continuing to use and/or disclose Yara's confidential, proprietary and trade secret information.

## V.      CAUSES OF ACTION

### Count I – Misappropriation of Trade Secrets
### Under the Defend Trade Secrets Act of 2016

55.     Yara realleges and incorporates by reference all preceding paragraphs.

56.     Defendants transferred, without authorization, Yara's trade secret information, including the documents and information identified above concerning the SIPP granulation system

and technology (the "Trade Secret Information").

57.     On information and belief, Defendants have used, continue to use and, unless enjoined, will continue to use Yara's Trade Secret Information to assist Yara's competitors.

58.     Yara developed the Trade Secret Information over many years and at great expense.

59.     Yara kept the Trade Secret Information confidential, and took reasonable steps to preserve its secrecy, including requiring Roland Monstrey to execute an employment agreement with a confidentially provision and restricting access to the Trade Secret Information through a variety of means.

60.     The Trade Secret Information was secret.  It was not generally known or available to the public or Yara's competitors, and it was not readily ascertainable by other means until Defendants published the information through one or more patent applications.  Yara went to great expense to maintain confidentiality of its Trade Secret Information.

61.     The Trade Secret Information provides Yara with a competitive advantage in the fertilizer manufacturing marketplace.

62.     Yara's Trade Secret Information is a "trade secret" under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831, *et seq*. (the "DTSA").

63.     Upon information and belief, Roland Monstrey acquired knowledge of Yara Trade Secret Information in his capacity as employee and consultant for Yara, and thus owed and continues to owe Yara a duty to maintain the secrecy of such information.

64.     Upon information and belief, Roland Monstrey accessed and transferred the Trade Secret Information in violation of his legal obligations to Yara.

65.     Upon information and belief, Roland Monstrey continues to possess Yara's Trade Secret Information and share it with his son, Ken Monstrey.

66.     Upon information and belief, Defendants' actions violate the Defend Trade Secrets Act.

67.     Upon information and belief, Defendants' actions in transferring and misappropriating Yara's Trade Secret Information for their own gain were willful, wanton, and malicious, and were taken with reckless disregard for Yara's rights.

68.     Defendants' actions have caused and will continue to cause Yara irreparable harm if not preliminarily and permanently enjoined.

69.     Yara suffers irreparable harm from Defendants' action, including potential loss of business, reputation, goodwill and trade secrets, all of which cannot be compensated by money damages.

70.     As a direct and proximate result of Defendants' unlawful conduct, Yara will suffer irreparable injury, as well as other damages, including lost profits, loss of intellectual property, loss of trade, goodwill, business and reputation.

## <u>Count II – Misappropriation of Trade Secrets</u><br><u>Under the Virginia Uniform Trade Secrets Act</u>

71.     Yara realleges and incorporates by reference all preceding paragraphs.

72.     As set forth above in great detail, upon information and belief, Roland Monstrey transferred Yara's Trade Secret Information to his son, Ken Monstrey.

73.     Yara's Trade Secret Information is a "trade secret" under the Virginia Uniform Trade Secrets Act, Section 59.1-336, *et seq*., of the Code of Virginia, as amended (the "Virginia Uniform Trade Secrets Act").

74.     Upon information and belief, Roland Monstrey acquired knowledge of Yara Trade Secret Information in his capacity as employee and consultant for Yara, and thus owed and continues to owe Yara a duty to maintain the secrecy of such information.

75.     Upon information and belief, Roland Monstrey accessed and transferred the Trade Secret Information in violation of his legal obligations to Yara.

76.     Upon information and belief, Roland Monstrey continues to possess Yara's Trade Secret Information and share it with his son, Ken Monstrey.

77.     Defendants' actions violate the Virginia Uniform Trade Secrets Act.

78.     Upon information and belief, Defendants' actions in transferring and misappropriating Yara's Trade Secret Information for their own gain were willful, wanton, and malicious, and were taken with reckless disregard for Yara's rights.

79.     Defendants' actions have caused and will continue to cause Yara irreparable harm if not preliminarily and permanently enjoined.

80.     Yara suffers irreparable harm from Defendants' action, including potential loss of business, reputation, goodwill and trade secrets, all of which cannot be compensated by money damages.

81.     As a direct and proximate result of Defendants' unlawful conduct, Yara will suffer irreparable injury, as well as other damages, including lost profits, loss of intellectual property, loss of trade, goodwill, business and reputation.

## **Count III – Breach of Contract**

82.     Yara realleges and incorporates by reference all preceding paragraphs.

83.     The offer of employment letter and employment agreement between Yara and Roland Monstrey constitute contracts between Yara and Roland Monstrey.

84.     In consideration of his employment, Roland Monstrey agreed to be bound by the terms and conditions set forth in his offer of employment letter and employment agreement.

85.     As a condition of his employment, among other things, Roland Monstrey agreed in

his offer of employment letter that he would maintain the confidentiality (during and after his employment) of "all matters relating to the company" and "general information on working procedures and results" that Yara provided to him during his employment.

86.     As a condition of his employment, among other things, Roland Monstrey agreed in the employment agreement that he signed that he would maintain the confidentiality (during and after his employment) of the "data or information that he may reasonably expect not to be intended for others and the disclosure of which could be harmful to the employer's interests," and that Yara provided to him during his employment.

87.     Roland Monstrey's employment agreement was supported by fair and adequate consideration and constitutes binding and enforceable obligations.

88.     Roland Monstrey's employment agreement is necessary to protect Yara's legitimate business interests, does not impose an undue hardship on Roland Monstrey, and is not against the public interest.

89.     All conditions precedent necessary to permit Yara to enforce Roland Monstrey's employment agreement have been performed or have occurred.

90.     By virtue of Roland Monstrey's conduct, including the misappropriation of confidential, proprietary, and trade secret information, he has breached, and continues to breach, his employment agreement.

91.     As a direct and proximate result of Roland Monstrey's unlawful conduct, Yara will suffer irreparable injury, as well as other damages, including lost profits, loss of intellectual property, loss of trade, goodwill, business and reputation.

**Count IV – Virginia Statutory Civil Conspiracy (Va. Code Ann § 18.2–499)**

92.     Yara realleges and incorporates by reference all preceding paragraphs.

93.     By conduct described in detail above, Defendants, as well as other known and unknown individuals or entities, have combined, associated, agreed, or acted in concert together for the purpose of willfully and maliciously injuring Yara in its business.

94.     Upon information and belief, in furtherance of this conspiracy, Defendants, as well as other known and unknown individuals or entities, used improper and unlawful means, including acting in violation of the Virginia Uniform Trade Secrets Act.

95.     Upon information and belief, Defendants' actions in furtherance of this conspiracy were taken to maliciously injure Yara in its trade and profession.

96.     Upon information and belief, Defendants' actions in furtherance of this conspiracy were taken intentionally, purposefully, and without lawful justification.

97.     As a direct and proximate result of Defendants' unlawful conduct, Yara will suffer irreparable injury, as well as other damages, including lost profits, loss of intellectual property, loss of trade, goodwill, business and reputation.

98.     Upon information and belief, Defendants have unlawfully profited in an amount to be proven at trial from the unlawful actions described above.

### Count V – Civil Conspiracy

99.     Yara realleges and incorporates by reference all preceding paragraphs.

100.    By conduct described in detail above, Defendants, as well as other known and unknown individuals or entities, have acted in concert, agreed, associated, mutually undertaken, and combined together to accomplish unlawful concerted actions with the purpose of injuring Yara.

101.    Upon information and belief, in furtherance of this conspiracy, Defendants, as well as other known and unknown individuals or entities, used improper and unlawful means, including

acting in violation of the Virginia Uniform Trade Secrets Act.

102.    Upon information and belief, Defendants' actions in furtherance of this conspiracy were taken to maliciously injure Yara in its trade and profession.

103.    Upon information and belief, Defendants' actions in furtherance of this conspiracy were taken intentionally, purposefully, and without lawful justification.

104.    As a direct and proximate result of Defendants' unlawful conduct, Yara will suffer irreparable injury, as well as other damages, including lost profits, loss of intellectual property, loss of trade, goodwill, business and reputation.

105.    Upon information and belief, Defendants have unlawfully profited in an amount to be proven at trial from the unlawful actions described above.

## VI.    REQUEST FOR INJUNCTIVE RELIEF

106.    Yara realleges and incorporates by reference all preceding paragraphs.

107.    Yara has no adequate remedy at law for all of Defendants' misconduct, as money damages are not adequate to compensate for the ongoing harm caused by Defendants' misconduct.

108.    Yara has a clear legal right to the requested relief, and the balance of equities weighs heavily in Yara favor.

109.    The public interest favors entry of an injunction to protect the legitimate business interests of parties who have substantial relationships with customers.

## VII.    PRAYER FOR RELIEF

 WHEREFORE, Yara seeks the following relief:

110.    A preliminary injunction or temporary restraining order providing that:

a)    Defendants will file either an office action response or a continuation patent application by February 15, 2018, as requested in Yara's Emergency Motion;

b)      Defendants will not amend the enclosed continuation patent application, unless ordered by the Court;

c)      Defendants will not abandon the pending GGT application or the enclosed continuation application.

111.     A permanent injunction requiring that Defendants:

a)      Return to Yara all of Yara's Trade Secret Information and other confidential information including any information copied from Yara's computers or computer networks and any documents or other Yara property copied or removed from Yara by Roland Monstrey or any other former or current Yara employee;

b)      Refrain from ever using any Yara Trade Secret Information and other confidential information, and from ever selling any product based thereon, regardless of whether the trade secret or confidential information is embodied only in a component part of a larger product, or the product is produced through the trade secret or confidential information;

c)      Destroy any inventory of products embodying or produced using Yara's Trade Secret Information or other confidential information;

d)      Refrain from filing any patent applications disclosing or claiming Yara's Trade Secret Information or other confidential information.

112.     An order requiring Defendants to pay Yara compensatory damages for the actual losses caused by their misappropriation of Yara's Trade Secret Information.

113.     An order requiring Defendants to pay to Yara punitive damages pursuant to Va. Code § 59.1-338(B).

114.    An order requiring Defendants to pay Yara's attorney's fees pursuant to Va. Code § 59.1-338.1.

115.    An order requiring Defendants to pay to Yara compensatory, incidental, and punitive damages for Defendants misappropriation of Yara's Trade Secret Information.

116.    An order requiring Defendants to pay to Yara its damages, including treble damages, and attorney's fees, pursuant to Va. Code Ann. § 18.2-500.

117.    An order requiring Defendants to pay to Yara the appropriate pre- and/or post-judgment interest on any award.

118.    An order requiring Defendants to pay to Yara its costs for bringing this lawsuit.

119.    Such other and further relief as this Court may find just and proper under the law.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Dated: February 8, 2018

Of Counsel:

Richard J. Berman (*pro hac vice*)
Janine A. Carlan (*pro hac vice*)
Taniel E. Anderson (*pro hac vice*)
ARENT FOX LLP
Washington, DC 20006-5344
Ph: 202.857.6000
Fax: 202.857.6395
richard.berman@arentfox.com
janine.carlan@arentfox.com
taniel.anderson@arentfox.com

Respectfully submitted,

/s/ *Gary A. Coad*
Gary A. Coad (VSB # 83759)
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006-5344
Ph: 202.857.6000
Fax: 202.857.6395
gary.coad@arentfox.com

*Attorneys for Plaintiffs*

## <u>VERIFICATION OF COMPLAINT</u>

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I am an authorized representative of Yara, and I declare that the statements in the Verified Complaint are true and correct based on personal knowledge, information supplied by Yara's employees and agents, and records kept by Yara in the ordinary course of business.

Executed on:  February 8, 2018

Name:  Victor Urban
Title:   Vice President, Patents

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he caused a copy of the foregoing Complaint to be served upon the following parties in the manner described on this 8th day of February 2018.

### a.      Green Granulation Technology Limited

| Means | Address |
|---|---|
| Email | asia@greengranulation.com<br>europe@greengranulation.com |
| Federal Express | Green Granulation Technology Ltd. – GGT Asia<br>Beautiful Group Tower, 18th Floor, Suite 1803<br>77 Connaught Road<br>Central<br>Hong Kong, China |
| Federal Express | Green Granulation Technology Ltd. – GGT Europe<br>In het Midden 35<br>1422 PA Uithoorn<br>The Netherlands |

### b.      Roland Monstrey

| Means | Address |
|---|---|
| Email | roland.monstrey@telenet.be |
| Federal Express | Roland Monstrey<br>Kloosterstraat 33<br>9960 Assenede<br>Belgium |

### c.      Ken Monstrey

| Means | Address |
|---|---|
| Email | kenmonstrey@greengranulation.com |
| Federal Express | Ken Monstrey<br>Lindekenstraat 18<br>9960 Assenede<br>Belgium |

### d. Wei Wang

| Means | Address |
|---|---|
| Email | weiwang@greengranulation.com |
| Federal Express | Wei Wang<br>Room 1108, Building 426<br>Wang Jing Xi Yuan (Area 4)<br>Chaoyang District, Beijing City<br>China |

### e. Steve Koehler (U.S. counsel for GGT, Ken Monstrey, and Wei Wang)

| Means | Address |
|---|---|
| Email | skoehler@wck.com |
| Federal Express | Steve Koehler<br>Westman, Champlin & Koehler, PA<br>900 Second Avenue South, Suite 1400<br>Minneapolis, Minnesota 55402 |

### f. Bruno Vandermeulen and Domien Op de Beek (European counsel for Defendants)

| Means | Address |
|---|---|
| Email | bruno.vandermeulen@twobirds.com<br>domien.op.de.beeck@twobirds.com |
| Federal Express | Bruno Vandermeulen<br>Domien Op de Beek<br>Bird & Bird LLP<br>Avenue Louise 235, Box 1<br>1050 Brussels<br>Belgium |

Dated: February 8, 2018                       Respectfully submitted,


Of Counsel:                                   /s/ *Gary A. Coad*
                                              _____
                                              Gary A. Coad (VSB # 83759)
Richard J. Berman (*pro hac vice*)            ARENT FOX LLP
Janine A. Carlan (*pro hac vice*)             1717 K Street, NW
Taniel E. Anderson (*pro hac vice*)           Washington, DC 20006-5344
ARENT FOX LLP                                 Ph: 202.857.6000
Washington, DC 20006-5344                     Fax: 202.857.6395
Ph: 202.857.6000                              gary.coad@arentfox.com
Fax: 202.857.6395
richard.berman@arentfox.com
janine.carlan@arentfox.com                    *Attorneys for Plaintiffs*
taniel.anderson@arentfox.com